## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RAY CHARLES SPIVEY, # B-43143,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-cv-503-MJR** |
| | ) | |
| **MICHAEL P. RANDAL,** | ) | |
| **KIM BUTLER,** | ) | |
| **RICHARD HARRINGTON,** | ) | |
| **MAJOR LASHBROOK,** | ) | |
| **SERGEANT K. CARTWRIGHT,** | ) | |
| **LT. BRADLEY,** | ) | |
| **SGT. SHURTZ,** | ) | |
| **SGT. MANNERICH,** | ) | |
| **A. HOOD,** | ) | |
| **WALTER McGEE,** | ) | |
| **LINDBERG,** | ) | |
| **ENGELASE,** | ) | |
| **VALLEYROY,** | ) | |
| **WESTERMAN,** | ) | |
| **JONES, and** | ) | |
| **SHURTZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Ray Charles Spivey, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  This case is now before the Court for a preliminary review of the second complaint (Doc. 12) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff Spivey contends that he has been subjected to a pattern of harassment and retaliation, motivated both by race and Plaintiff's history of filing numerous administrative grievances and civil lawsuits against prison staff. Plaintiff contends that the harassment and

retaliatory action has caused him great stress and affected his blood pressure, placing him at risk for a heart attack or stroke.   He even fears being murdered.

The narrative in the second amended complaint includes several pages detailing events that do not pertain to named defendants (Doc. 12, pp. 2-5 (as numbered in the cm-ecf system)).   Allegations pertaining to individuals not named as defendants will not be addressed and are not recognized as claims, but instead are considered only contextually.   The following is a synopsis of the relevant allegations.

On February 4, 2013, Plaintiff was removed from his protective custody cell by Major Lashbrook and other unidentified guards and placed in a segregation cell for nine days under "investigatory status."   Plaintiff was not told why he was under investigation, but when he was later released from segregation no charges were filed.[1]

Plaintiff had been in protective custody for unspecified "security and safety concerns" (Doc. 12, p. 6).   When he was released from segregation, C/O Cheatman (who is not a named defendant) said that Plaintiff could not return to a protective custody cell because there was no space available.   C/O A. Hood told Plaintiff that nothing would happen to him because he was being celled alone in an area that was on lockdown.   Hood then explained that he could not find Plaintiff's personal property, which Plaintiff had not been allowed to pack before he was removed from his original protective custody cell.   In an attempt to locate the property, Hood purportedly left a message with Internal Affairs.   C/O Westerman later retrieved Plaintiff's personal property from Internal Affairs and delivered it to Plaintiff.   Plaintiff discovered that several items were missing—such as shower shoes, Irish Spring soap and Colgate toothpaste,

---

[1] It is also suggested that, in an act of retaliation, Lashbrook fabricated the charge that was being investigated.   However, documentation attached to the complaint reflects that the charge was lodged by R. Elliott and investigatory status was authorized by Major Moore (*see* Doc. 12, p. 29).

worth approximately $18.  After Plaintiff filed a grievance, he was told that Internal Affairs denied ever having Plaintiff's property.    Plaintiff claims that all of these acts were done in retaliation for Plaintiff's many grievances against Menard staff.

On May 8, 2013, Plaintiff purchased a television from the Menard commissary for $206.25.  Within a week, all of the channels were "locked out" and the set could not be fixed. C/O A. Hood returned the television to the commissary, and on May 21, 2013, Plaintiff was given a new television.  Approximately four months later, on September 26, 2013, the sound went out on 11 channels on the second television.  At Plaintiff's request, Sgt. Shurtz directed C/O Davis to take the broken television to the commissary for a replacement.    C/O Davis refused to do anything, telling Plaintiff the set had to go to the vocational school repair shop for repair.    Plaintiff was concerned because the television had a warranty that, by Plaintiff's calculation, was going to expire in October 21, 2013.  Davis essentially told Plaintiff to take the television to the commissary himself, and he walked away.  Plaintiff spoke with Lt. Cartwright about his problem, who in turn spoke to Sgt. Shurtz; C/O Davis subsequently picked up the television from Plaintiff and then told Plaintiff the set had been given to an unidentified escort officer.  Plaintiff later found out that the television had been taken to the vocational department repair shop, not to the commissary.  Plaintiff states that he knows Sgt. Shurtz had the television taken to the repair shop, rather than the commissary where it would be replaced under the warranty, "in retaliation for [Plaintiff] going to Lt. Cartwright, who conspired with Sgt. Shurtz to show [Plaintiff] that he was not running nothing" [sic] (Doc. 12, p. 7), and because of Plaintiff's pending lawsuits against prison personnel.  Plaintiff also asserts that Commissary Supervisor Jones said the warranty had expired—that it was a 60-day warranty, not a 180-day warranty.  In any event, when Lt. Cartwright requested Plaintiff sign a $10 payment voucher for the repair

Plaintiff refused, citing his still valid warranty.  During the discussion about the validity of the warranty, Plaintiff accused Cartwright of retaliation, prompting Cartwright to say, "Sue me."

Plaintiff wrote to Assistant Warden Kim Butler, explaining the warranty issue and noting that the repair shop had been closed for a year.  Plaintiff asked for a replacement television, asserting that the products at the commissary were overpriced and defective, due to a price-gauging conspiracy between Commissary Supervisory Jones and Warden Harrington. Butler responded that Sgt. Cartwright had told her that the warranty had expired, but that the television was going to be repaired at no charge.  During the time the television was out for repair, each day Plaintiff brought the matter to the attention of Lt. Cartwright, which eventually lead C/O Hood, C/O Lindberg and other unidentified guards to "laugh and make jokes" about Plaintiff, knowing the television had been taken to the repair shop in retaliation against Plaintiff. Grievances and another letter to Assistant Warden Butler went unanswered.  As Assistant Warden of Programs, Butler could have cured Plaintiff's problems and saved him a great deal of stress, lost sleep and the related physical toll.

The television was finally returned to Plaintiff on October 25, 2013, by C/O Westerman.  All but five of the 66 channels had been deleted—three of the remaining channels were Spanish language stations, but Plaintiff does not speak Spanish.  In addition, Plaintiff was locked out from programming any more channels into the set.   Plaintiff claims that the channels were altered in another act of retaliation.  C/O Valleyroy took the television back to the repair shop and told Plaintiff that it would not be repaired unless a $10 payment voucher was signed. Plaintiff asserts that Valleyroy and C/O Engelase were aware that Vocational School Supervisor Shurtz had deleted the channels and locked out the menu mechanism in retaliation, but nothing was done.

On November 2, 2013, Plaintiff asked Lt. Cartwright when he would be getting his television.  Cartwright told Plaintiff he would get it when he got it.  On two occasions Plaintiff attempted to speak to Lt. Hughes and Lt. Bradley, but C/O Davis interjected and nothing came of Plaintiff's complaints.  Another attempt to enlist the assistance of Lt. Bradley was blocked by C/O Lindberg, who stopped Plaintiff and said, "Didn't I just talk to you about that TV?"—provoking a response from Plaintiff.  Lt. Bradley then took issue with how Plaintiff had talked back to Lindberg.  Lindberg later found Plaintiff in his cell and warned Plaintiff not to ever disrespect him in front of his lieutenant.  Their conversation concluded with Lindberg telling Plaintiff that he, Lindberg, would make sure Plaintiff never got the television—which he has not.  Plaintiff considered that a threat, so he filed an emergency grievance with Warden Harrington, but Harrington rejected the grievance, concluding it was not an emergency.  Sgt. Shurtz is also aware of Plaintiff's problems, but he continues to assign the problematic guards to Plaintiff's gallery.  Daily, C/O Lindberg walks the gallery where Plaintiff is celled, staring at plaintiff in an "aggressive" manner, trying to get a reaction out of Plaintiff.  In addition, Sgt. Mannerich refused Plaintiff's request for an Intern Affairs investigation of Lindberg.  Plaintiff then wrote directly to Major Lashbrook, Supervisor of Internal Affairs, but there still has not been an investigation about the television, retaliation, threats and harassment.

The second amended complaint also details how just after the television was taken away for the final time, C/O Hood asked Plaintiff's cellmate if Plaintiff was still upset about the television—Hood and other guards then started laughing.  The next day, C/O Lindberg and C/O Davis were making jokes and remarks about Plaintiff and the television.  Plaintiff also contends he is under threat of being murdered by C/O Davis, who is under investigation for endangering the life of another African American inmate.  And, Davis is "buddies" with Hood and Lindberg,

so Plaintiff is afraid of them as well—they are all aware of this pending civil action.  Plaintiff asserts that prison guards are racists, who tell racist jokes and make racist comments.  He further notes that he is an older, African American inmate, who is referred to as "Mississippi" (Plaintiff's birthplace).

Plaintiff offers other broad allegations.  He takes issue with Warden Harrington, who is responsible for all staff and signs every grievance, but who has not helped Plaintiff.   He contends Sgt. Cartwright may have been the one to delete the channels and "lock out" the menu feature on his television.  Bradley allegedly conspired with Lindberg to cause Plaintiff stress.  And, C/O Hood tried to bump into Plaintiff outside the shower area, causing Plaintiff to have to turn and bump the cell bars in order to avoid a collision.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into seven counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:  Major Lashbrook placed Plaintiff in segregation under "investigatory status" in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;**
>
> **Count 2:  C/O Hood and C/O Westerman deprived Plaintiff of his personal property in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;**
>
> **Count 3:  Sgt. Shurtz, Lt. Cartwright, C/O Davis and Commissary Supervisor Jones, individually or in conspiracy, interfered with the repair of Plaintiff's television and the applicable warranty in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;**

**Count 4:**   **Assistant Warden Butler, Commissary Supervisor Jones, Warden Harrington and Sgt. Cartwright failed to intervene to secure the repair and return of Plaintiff's television in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;**

**Count 5:**   **Commissary Supervisor Shurtz and or Sgt. Cartwright "locked out" all but five of 66 channels on Plaintiff's television, and C/O Valleroy and C/O Engelase, knowing what Shurtz had done, further impeded Plaintiff's efforts to get the television repaired, all in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;**

**Count 6:**   **Lt. Cartwright, C/O Lindberg Warden Harrington, Sgt. Mannerich and Major Lashbrook failed to investigate and cure the locked out channels and repair issues in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment; and**

**Count 7:**   **C/O Hood, C/O Davis C/O Lindberg and Lt. Bradley, individually and in conspiracy, engaged in a course of harassment, in violation of Plaintiff's rights under the First Amendment.**

The long narrative of events laid out in the second amended complaint contains numerous affronts that have not been included as specific claims. This is because Plaintiff has made it difficult to discern contextual details from claims. The Court will attempt to touch upon as many of the allegations as possible. Any claims Plaintiff perceives the Court has missed should be considered dismissed without prejudice.

## Controlling Legal Principles

Because Plaintiff alleges that all of the events described in the second amended complaint were the product of retaliation, the following basic principles apply to all claims.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Suing prison officials is protected activity under the First Amendment. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir.2005). Similarly, retaliation for filing a grievance violates the First Amendment. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Although only "notice pleading" is required under Federal Rule of Civil Procedure 8(a) and *Twombly*, it is helpful to understand that to prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012).

The complaint initially appears to be frivolous. However, *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995), explains that "a campaign of petty harassment" and "even minor forms of retaliation," or "false accusations" can be actionable under the First Amendment. *See also Power v. Summers*, 226 F.3d 815, 820 -821 (7th Cir. 2000). Furthermore, *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009), indicates that a series of allegations, while not actionable individually, reasonably could be found to have been the product of retaliation, making each claim actionable under Section 1983. In *Bridge*s, the plaintiff "alleged that he suffered retaliation through delays in his incoming and outgoing mail; harassment by a guard kicking his cell door, turning his cell light off and on, and opening his cell trap and slamming it shut in order to startle him when he was sleeping; unjustified disciplinary charges; and improper dismissal of his grievances." *Bridges*, 557 F.3d at 552.

## Discussion

As a general matter, the Court finds that the second amended complaint satisfies the notice pleading standard relative to all retaliation claims—which is not to say that the claims will ultimately succeed.  The allegations that Plaintiff is known for filing lawsuits and grievances against Menard staff, along with references to certain lawsuits and grievances, and the grievances attached to the second amended complaint are sufficient under the notice pleading standard to alert the defendants to the protected activity underlying the retaliation claims.  Given that relatively trivial acts can be actionable if motivated by retaliation, all of the incidents in the complaint could, arguably, deter First Amendment activity in the future.  And, whether Plaintiff's lawsuits and grievances were at least a motivating factor in the defendants' decisions to take the retaliatory action involves factual issues that cannot be decided at this juncture in the case.  But, that does not end the Court's preliminary analysis of the second amended complaint.

The *Twombly* pleading standard must also be met relative to the allegations against each defendant, to ensure plausible claims have been stated against each defendant. Conclusory allegations are insufficient and personal involvement must be pleaded in order for liability to attach under Section 1983.  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).  It is those principles that underlie the following analysis whittling away a few matters.

**Stray Defendants**

As a preliminary matter, the Court will address a few "stray" defendants—those who are named in the caption but not discussed within the narrative of allegations and those not named as defendants but mentioned in the narrative.

Michael P. Randall, Director of the Illinois Department of Corrections, is listed in the caption of the complaint as a defendant, but there are no allegations regarding Randall in the narrative of the complaint.  Merely naming a defendant in the caption is insufficient to state a claim.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  Also, the doctrine of *respondeat superior*—supervisory liability—does not apply to actions filed under 42 U.S.C. § 1983.  *See*, e.g., *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference."  *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir.2011).  Consequently, the complaint fails to state a claim regarding Director Randall and he will be dismissed with prejudice.

Although C/O Walter McGee is named as a defendant, the second amended complaint describes McGee as having "corrected the wrongs of security guards when Plaintiff was on a hunger strike.  The guards did not document that Plaintiff was on a hunger strike for three days, but McGee was the one to bring a nurse to check on Plaintiff and "start" the hunger strike.  Plaintiff states that he has confused McGee and Davis and asks the Court to "substitute names."  The Court cannot make heads or tails of what Plaintiff is attempting to convey relative to McGee (*see* Doc. 12, p. 16).  McGee will be dismissed as a defendant, and any intended claim against him should be considered dismissed without prejudice.

C/O Davis is listed as a defendant in the case caption; therefore, despite seemingly contradictory statements regarding whether Davis is or is not intended to be a defendant in the second amended complaint, Davis is considered to be a defendant and has been included as a defendant in relevant counts. The Clerk of Court will be directed to add Davis as a defendant.

The allegation in Count 5 regarding C/O Valleyroy and C/O Engelase fail to state claims upon which relief can be granted, even under a retaliation theory.  Allegedly, C/O Valleyroy took Plaintiff's television to the vocational shop after all but five of 66 channels had been deleted and returned to inform Plaintiff that the television would not be repaired unless Plaintiff signed a $10 voucher.   Valleyroy and C/O Engelase purportedly were aware that Vocational School Supervisor Shurtz had deleted the channels and locked out the menu mechanism in an act of retaliation, but Valleyroy and Engelase did nothing. Velleyroy merely conveying that the Vocational Department wanted $10 to repair the television cannot reasonably be viewed as retaliatory, and there is no allegation that he was acting on concert with Shurtz. Furthermore, Valleyroy and Engelase's mere knowledge of a past retaliatory act is not a constitutional violation and does not impose a duty upon them to take action.   There is nothing from which to infer that Valleyroy or Engelase had a realistic opportunity to prevent their fellow officers from violating Plaintiff's rights.  *See Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011) (liability may attach for setting in motion a series of events that reasonably could be foreseen as leading to a constitutional deprivation by others).  *See generally Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000), and *Yang v. Hardin*, 37 F.3d 282, (7th Cir. 1994) (both cases discussing liability for nonfeasance generally and relative to excessive force incidents).  For these reasons,

Plaintiff has failed to state a claim and Valleyroy and Engelase will be dismissed without prejudice.  Count 5 shall otherwise proceed against Defendants Shurtz and Cartwright.

**Conspiracy Claims**

Insofar as the second amended complaint may be read to suggest some overarching conspiracy to retaliate against Plaintiff, or other disparate conspiratorial acts, any and all conspiracy-based claims should be considered dismissed without prejudice for the following reasons.

A conspiracy is not an independent basis of liability. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000). To be cognizable under Section 1983, the conspiracy must have resulted in the violation of an inmate's civil rights.  S*ee Lewis v. Washington,* 300 F.3d 829, 831 (7th Cir. 2002).  Conspiracy liability requires a showing that: (1) the individuals reached an agreement to deprive plaintiff of his constitutional rights; and (2) overt acts in furtherance actually deprived plaintiff of those rights. *See Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir.1988).

No agreement among any defendants has been adequately pleaded; only as opposed speculative, conclusory assertions have been made.  The conspirators must have shared the same objective (to violate Plaintiff's constitutional rights), and agreed to the general nature and scope of the conspiracy.  *See Green v. Benden,* 281 F.3d 661, 665–66 (7th Cir.2002). Circumstantial evidence may be used to prove a conspiracy, but the evidence must not be speculative.  *Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir.2003).  The circumstantial evidence must be "sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Green,* 281 F.3d at 666.    Plaintiff's allegations and assertions are insufficient to present a

plausible claim of an overarching conspiracy or of any plausible agreement among defendants relative to any individual incident or claim.

**Race-based Claims**

        The complaint broadly asserts that the defendants were motivated by racial animus.  Of course, the Fourteenth Amendment guarantees the equal protection of the laws, prohibiting disparate treatment based on race.  To show a violation of equal protection based on race, "plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police,* 251 F.3d 612, 635–36 (7th Cir. 2001).  Plaintiff alleges that guards generally tell racist jokes and make racist comments.  It is not alleged that any specific defendant made such comments and jokes regarding Plaintiff.  Although is referred to as "Mississippi," he acknowledges Mississippi is his place of birth, so there is no reason to assume the remark is based on Plaintiff's race.  Under the *Twombly* pleading standard, no equal protection claim has been adequately pleading and should be considered as dismissed without prejudice.

**Disposition**

        The Clerk of Court is **DIRECTED** to add **C/O DAVIS** as a defendant.  The Clerk of Court is further **DIRECTED** to have the case caption distinguish between the two defendants named Shurtz by designating them **SGT. SHURTZ** and **SUPERVISOR SHURTZ**.

        **IT IS HEREBY ORDERED** that, for the reasons stated, **MICHAEL P. RANDALL** is **DISMISSED with prejudice**; and **WALTER McGEE**, **C/O VALLEYROY** and **C/O ENGELASE** are **DISMISSED without prejudice**.

        **IT IS FURTHER ORDERED** that any and all conspiracy and race-based equal protection claims are **DISMISSED without prejudice**.

COUNTS 1-7 shall otherwise **PROCEED** against Defendants **KIM BUTLER**, **RICHARD HARRINGTON**, **MAJOR LASHBROOK**, **SERGEANT K. CARTWRIGHT**, **LT. BRADLEY**, **SGT. SHURTZ**, **SGT. MANNERICH**, **A. HOOD**, **LINDBERG**, **WESTERMAN**, **JONES**, **SUPERVISOR SHURTZ** and **C/O DAVIS**.

The Clerk of Court shall prepare for Defendants **KIM BUTLER**, **RICHARD HARRINGTON**, **MAJOR LASHBROOK**, **SERGEANT K. CARTWRIGHT**, **LT. BRADLEY**, **SGT. SHURTZ**, **SGT. MANNERICH**, **A. HOOD**, **LINDBERG**, **WESTERMAN**, **JONES**, **SUPERVISOR SHURTZ** and **C/O DAVIS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration

by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), if all parties consent to such a referral.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than 7 days after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 17, 2014**

<u>**s/ Michael J. Reagan**</u>
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**