IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAY CHARLES SPIVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-503-NJR-DGW |
| ) | |
| KIM BUTLER, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants (Doc. 57) be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff Ray Charles Spivey, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), currently incarcerated at Menard Correctional Center ("Menard") brings this action pursuant to 42 U.S.C. § 1983 alleging that he has been subjected to a pattern of harassment and retaliation, motivated by his history of filing administrative grievances and civil lawsuits.

Plaintiff's initial complaint in this matter (Doc. 1) was dismissed without prejudice and Plaintiff was granted leave to amend by Chief District Judge Michael J. Reagan (Doc. 6). On July 25, 2013, Plaintiff filed an amended complaint (Doc. 8) and, prior to the Court undertaking its screening of the amended complaint, Plaintiff filed his second amended complaint (Doc. 12), the operative complaint in this matter. The Court screened Plaintiff's second amended complaint and allowed Plaintiff to proceed on the following counts:

Count 1: Major Lashbrook placed Plaintiff in segregation under "investigatory status" in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;

Count 2: C/O Hood and C/O Westerman deprived Plaintiff of his personal property in retaliation for his filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;

Count 3: Sgt. Shurtz, Lt. Cartwright, C/O Davis, and Commissary Supervisor Jones, interfered with the repair of Plaintiff's television and the applicable warranty in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;

Count 4: Assistant Warden Butler, Commissary Supervisor Jones, Warden Harrington, and Sgt. Cartwright failed to intervene to secure the repair and return of Plaintiff's television in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;

Count 5: Commissary Supervisor Shurtz and/or Sgt. Cartwright "locked out" all but five of the 66 channels on Plaintiff's television, in retaliation for Plaintiff filing grievances and lawsuits against Menard staff; in violation of Plaintiff's rights under the First Amendment;

Count 6: Lt. Cartwright, C/O Lindberg, Warden Harrington, Sgt. Mannerich, and Major Lashbrook failed to investigate and cure the locked out channels and repair issues in retaliation for Plaintiff filing grievances and lawsuits against Menard staff, in violation of Plaintiff's rights under the First Amendment;

Count 7: C/O Hood, C/O Davis, C/O Lindberg, and Lt. Bradley engaged in a course of harassment, in violation of Plaintiff's rights under the First

Amendment.

The Defendants in this action, Christopher Bradley, Kimberly Butler, Kevin Cartwright, Ryan Davis, Richard Harrington, Aaron Hood, Shane Jones, Jacqueline Lashbrook, Donald Lindenberg, Lucas Mennerich, Roger Shurtz, Tyson Shurtz, and Aaron Westerman, filed a motion for summary judgment on the issue of exhaustion (Doc. 57), arguing Plaintiff failed to exhaust his administrative remedies prior to filing this suit. Based on a review of the grievance records maintained by the Administrative Review Board ("ARB") and Menard, Defendants contend that Plaintiff failed to grieve, or failed to exhaust his grievances, as to every claim against each Defendant prior to filing this lawsuit. Plaintiff responded to Defendants' motion[1] (Docs. 60 and 61) and a hearing was held pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) on July 13, 2015, in which Plaintiff appeared by video-conference and testified as to the efforts he undertook to exhaust his claims in this matter.

## FINDINGS OF FACT

As indicated above, Plaintiff's claims in this action arise from an alleged pattern of harassment and retaliation undertaken by Defendants due to Plaintiff's history of filing grievances and civil lawsuits. The events complained of in this lawsuit span from approximately February, 2013 through November, 2013. In their motion seeking summary judgment on the issue of exhaustion, Defendants point to five grievances filed during this time frame that relate to the claims and/or defendants in this lawsuit, the content of which is set forth below.

On **April 3, 2013**, Plaintiff filed a grievance (Def. Ex. A-3, Doc. 58-4, pp. 10-11),

---

[1] Plaintiff filed an initial response to Defendants' motion for summary judgment on March 13, 2015 (Doc. 60) and a second, or supplemental, response to Defendants' motion (Doc. 61). As Defendants have not objected to Plaintiff's filing a supplemental response, the Court will consider both responses in this Report and Recommendation.

complaining that his personal property was stolen or missing after he was placed in segregation. The only defendant mentioned in this grievance is Major Lashbrook, whom Plaintiff states told him that "someone would be disciplined because [his] property was not inventoried," and indicated that internal affairs is responsible for the security of his property. This grievance was responded to by Plaintiff's counselor on April 16, 2013 and reviewed by the Grievance Officer on June 13, 2013. The Warden concurred with the Grievance Officer's review on June 19, 2013 and Plaintiff appealed the decision to the Administrative Review Board ("ARB"). The ARB responded on the merits on April 9, 2014.

Plaintiff filed a similar grievance complaining about the loss of his personal property on **April 11, 2013** (Def. Ex. A-3, Doc. 58-4, pp. 12-13). Plaintiff explains that on February 4, 2013 Major Lashbrook had him cuff up to be taken to segregation and he was not allowed to pack his property. Plaintiff explains that when his property was returned, various items were missing and Major Lashbrook indicated she would look into it. Plaintiff's counselor reviewed this grievance on April 12, 2013 and it was reviewed, along with the April 3, 2013 grievance, by the Grievance Officer on June 13, 2013. The Warden concurred in the Grievance Officer's response on June 19, 2013 and Plaintiff appealed the decision to the ARB, which responded on the merits on April 9, 2014.

Plaintiff also filed two grievances related to issues concerning his television, and the repairs thereof, dated October 15, 2013 and October 28, 2013. In particular, Plaintiff complains that his television was improperly taken to the vocational repair shop instead of the commissary. Plaintiff informed defendant correctional officers Lashbrook, Davis, and Hood, commissary supervisor Jones, and Warden Kimberly Butler of the issues related to his television repair, to no

avail. The counselor responded to these grievances on October 23, 2013 and October 31, 2013, respectively, and they were responded to by the Grievance Officer on November 26, 2013. The Warden concurred with the Grievance Officer's response on November 27, 2013, and Plaintiff appealed the decision to the ARB. The ARB received Plaintiff's grievances on December 9, 2013, and issued its response on the merits on July 7, 2014.

Plaintiff also filed a grievance dated **January 22, 2014** (Def. Ex. A-4, Doc. 58-5, pp. 2-3) naming Defendants Lindenberg, Cartwright, and Roger Shurtz. In this grievance, Plaintiff complains that he was issued a disciplinary ticket that was unjustified and that he was prevented from presenting his defense at the disciplinary hearing. There is no counselor's response on this grievance, but it was responded to on the merits by the Grievance Officer on February 11, 2014. The Warden concurred with the Grievance Officer's response on February 25, 2014, and Plaintiff appealed the decision to the ARB, which received this grievance on March 3, 2014. There is no response by the ARB to this grievance on the record before this Court.

*Pavey Hearing*

At the hearing held on July 13, 2015, Plaintiff expounded on the arguments he articulated in his response to Defendants' motions, primarily asserting that he attempted to file grievances related to the claims in this lawsuit, but his efforts were thwarted by Menard personnel who lost or destroyed his grievances.

Generally, Plaintiff explained that he is an inmate who is well-versed in the grievance process, as evidenced by his records dating back to his incarceration in 1995 (*see* Def. Ex. A-1, Doc. 58-2). Plaintiff argued that he understands the grievance process is necessary in order to bring a lawsuit and, as such, his history of filing grievances evidences the fact that he would

have filed grievances before bringing this lawsuit. More specifically to his claims here, Plaintiff stated that he attempted to file grievances as to each claim and each defendant by placing them in the grievance box, but they were destroyed or lost. When pressed by the Court regarding his specific attempts to grieve the claims in this lawsuit, Plaintiff only testified that he filed grievances at the prison, but never received a response; Plaintiff was unable to provide any specific details as to the content of the grievances or when they were written or submitted for review.

Defendants argued that Plaintiff's grievance records document that he is indeed a frequent griever and he has been able to fully exhaust numerous grievances during his incarceration. Defendants contend that Plaintiff's inability to recall details of the grievances he allegedly filed and his inconsistencies in attempting to explain his filing of these grievances evidences his lack of credibility with regard to this matter.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a

matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

*Exhaustion Requirements under the PLRA*

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires

proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

*Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance form shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint. *Id.* § 504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed, where reasonably feasible under the circumstances. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative remedies are not exhausted until the appeal is ruled on by the Administrative Review Board. *See*

*Id.* The Administrative Review Board shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id.* § 504.850(f).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840. If, after receiving a response from the CAO, an offender feels that the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id.* § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

Based on the evidence adduced and arguments made at the hearing, it is recommended that the Court find Plaintiff failed to exhaust as to all claims and against all defendants prior to filing suit.

First, the Court does not find Plaintiff credible in his assertion that his attempts to grieve the events at issue in this lawsuit were thwarted due to grievances being lost or destroyed. Based on the evidence before the Court, it is apparent that Plaintiff is an inmate experienced in the grievance process. Plaintiff filed numerous grievances since his incarceration in 1995 (Doc. 58-2). Importantly, during the time period relevant to this lawsuit, Plaintiff was able to grieve, and complete the administrative review process, for a number of grievances. Plaintiff's ability to exhaust grievances during the relevant time period supports a finding that officers at Menard did not conspire to destroy grievances filed by Plaintiff. Moreover, Plaintiff was unable to recall, with *any* specificity, the content of these grievances or the date or manner in which he attempted to submit them. Finally, Plaintiff presented no grievance or document wherein he complained that he was not receiving answers to grievances that he filed.

Accordingly, the question before the Court is whether the grievances in the record were properly exhausted and whether they sufficiently address the claims and identify the defendants in this lawsuit.

Plaintiff's grievances dated April 3 and April 11, 2013 concerning Plaintiff's missing personal property are not sufficient to exhaust any of Plaintiff's claims in this lawsuit. Although the ARB ultimately addressed these grievances on the merits, its response was not issued until April 9, 2014, *after* Plaintiff filed his Second Amended Complaint in this matter on November

27, 2013.  Importantly, while the Court is mindful that the ARB took more than six months to respond to this grievance[2], having received it on June 28, 2013, this circumstance is not determinative in this instance.  The Court need not determine whether the nine months the ARB took to respond to Plaintiff's grievances was reasonable, as Plaintiff failed to wait at least six months for a response before filing suit.  For these reasons, the Court finds that Plaintiff's April 3 and April 11, 2013 grievances were not exhausted prior to his filing suit.

With regard to his October 15, 2013 and October 28, 2013 grievances regarding issues with his television, the Court finds that Plaintiff was again premature in filing suit in this matter.  Plaintiff's Grievance Officer responded to these grievances on November 26, 2013 and the Warden responded on November 27, 2013, the same day Plaintiff his Second Amended Complaint.  Accordingly, the ARB had neither received these grievances, nor been given adequate time to respond, prior to Plaintiff filing suit.  Accordingly, Plaintiff's October 15 and October 28, 2013 grievances are insufficient to exhaust any claims against any defendants.

Finally, Plaintiff's grievance dated January 22, 2014 is insufficient to exhaust any claims in this matter as it was filed *after* Plaintiff initiated this lawsuit.  Further, there is no ARB response on the record so it is not apparent that this grievance was ever addressed on the merits.

### RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Christopher Bradley, Kimberly Butler, Kevin Cartwright, Ryan Davis, Richard Harrington, Aaron Hood, Shane Jones, Jacqueline Lashbrook, Donald

---

[2] Pursuant to the Illinois Administrative Code, the ARB shall make a final determination of the grievance within six months after receipt, where reasonably feasible under the circumstances. ILL. ADMIN. CODE TIT. 20, § 504.850(f).

Lindenberg, Lucas Mennerich, Rober Shurtz, Tyson Shurtz, and Aaron Westerman (Doc. 57) be **GRANTED**, that this case be **DISMISSED WITHOUT PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 23, 2015**

                                                **DONALD G. WILKERSON**
                                                **United States Magistrate Judge**